Paul J. Yesawich, Jr., J.
By this writ of habeas corpus relator challenges the constitutionality of certain sections of article 9 of the Mental Hygiene Law. He was arrested and charged with selling and possessing dangerous drugs. Medical examinations and tests conducted upon him verified that he was a narcotic addict within the meaning of the Mental Hygiene Law (§ 201). He sought, but failed to obtain, civil certification to the custody of the Narcotic Addiction Control Commission. Relator thereupon withdrew his not guilty plea and entered a plea of guilty to selling a dangerous drug (a class B felony), thereby becoming eligible for criminal certification to the commission. The Chemung County Court, exercising the discretion *392 allowed by the Mental Hygiene Law (§ 208, snbd. 4, par. b), certified relator to the commission, rather than sentencing him to an indeterminate sentence to an institution under the jurisdiction of the State Department of Correction. The commission withheld its consent to that certification (Mental Hygiene Law, § 210-a), “ because of limitation of facilities and funds”, and relator was returned to the county jail where he is presently confined. The issue posed is what sentencing options are now open to the sentencing Judge.
The Mental Hygiene Law (§ 208, subds. 4, 5) and Penal Law (§ 60.15), read together, require a Judge, initially, to either certify a defendant to the commission or to impose an indeterminate prison .sentence. Probation, conditional and unconditional discharge and definite sentences are not authorized in the case of a narcotic addict. Relator argues that the Legislature’s removal of the sentencing alternatives which are available to convicted nonaddict felons operates to deprive a convicted addict-felon (whose certification has been directed by the sentencing court, but refused by the commission for lack of funds and facilities) of equal protection of the law.
A declared purpose of article 9 was the adoption of a comprehensive program of rehabilitative treatment and aftercare for those suffering from the disease of drug addiction. In the circumstances presented here, to read the Mental Hygiene Law and Penal Law so as to now limit the sentencing Judge solely to the imposition of an indeterminate sentence would run contrary to the intent of article 9. The indeterminate sentence alternative only comes into play if certification is not chosen. Here, certification was the course chosen. The commission’s lack of available resources should not 'be viewed as requiring felon-addicts who the court in its discretion has determined would be aided by treatment rather than by imprisonment, to be diverted into a stricter .sentencing avenue than they would have faced if they were nonaddict felons. The sentencing Judge’s determination that treatment would be beneficial or desirable (and by implication that an indeterminate sentence would not) was required to be made upon the fullest information as to the relator’s previous record and his social and medical history. That determination should not now be ignored.
Relator also urges that because narcotics addiction has been recognized as an illness by the Legislature, commitment to the Department of Correction would constitute cruel and unusual punishment. This contention, which implies that a narcotics addict has a constitutional right to a State-provided cure, is without merit. (Smith v. Follette, 445, F. 2d 955, 961.) He *393 contends further that the commission is violating the equal protection clause because of its arbitrariness in accepting civilly certified addicts while not accepting criminally certified addicts and by its failure to take addicts presently criminally certified although planning at some indefinite future date to accept addicts who are criminally certified after that date. While it is unfortunate that the number of addicts far exceeds the capacity of the treatment facilities, there is nothing unreasonable about this allocation of the commission’s resources. The basis for the distinction in the treatment to be accorded different categories of addicts being reasonable and not intentionally and invidiously discriminatory, there is no denial of equal protection of the law. (Smith v. Follette, supra.)
Finally, relator maintains that the absence of statutory guidelines in the Mental Hygiene Law (§ 210-a) permits the commission to grant or withhold consent in an arbitrary and capricious manner, thereby denying addicts whose certification is refused, due process of law. This issue need not be met, for this court concludes that the sentencing Judge now has all of the sentencing options open which are available to other non-addict class B felons, and the commission’s refusal to accept relator for treatment therefore did not deprive him of any legally protected right.
The writ is sustained to the extent that relator is directed to be brought forthwith before the Chemung County Judge to be sentenced to an indeterminate sentence as provided under the Penal Law (§ 60.15, subd. [b], par. [ii]) or to any other lawful sentence which can be imposed upon nonaddict class B felon.